# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 412 | **DATE** | 1/10/2005 |
| **CASE TITLE** | Mullally vs. The Boise Cascade Corporation Long Term Disability Plan, et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied. Pretrial conference set for 1/27/05 and jury trial set for 1/31/05 are vacated. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 1 1 2005 | |
| | Notified counsel by telephone. | | date docketed | 24 |
| ✓ | Docketing to mail notices. | | GMA | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | MF | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice · mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA MULLALLY f/k/a )
LISA BARCH, )
　　　　　　　　　　　　　　　　　　　)
　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　)
　　v. ) No. 04 C 412
　　　　　　　　　　　　　　　　　　　)
THE BOISE CASCADE CORPORATION ) Judge John W. Darrah
LONG TERM DISABILITY PLAN )
and CONTINENTAL CASUALTY )
COMPANY, a CNA company, )
　　　　　　　　　　　　　　　　　　　)
　　　Defendants. )

DOCKETED
JAN 1 1 2005

MEMORANDUM OPINION AND ORDER

Plaintiff, Lisa Mullally, filed suit against Defendants, the Boise Cascade Corporation Long Term Disability Plan and Continental Casualty Company, alleging that she was wrongfully denied disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA), 29 U.S.C. §§ 1001-3508. Specifically, Plaintiff contends that she was continuously unable to perform her job. In response, Defendants contend that they conducted an investigation of Plaintiff's claim and determined that Plaintiff had failed to establish she was continuously incapable of performing her job. Presently before the Court are cross motions for summary judgment.

LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal

purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999).

## BACKGROUND

The undisputed facts, for the purposes of these motions, are taken from the parties' Local Rule 56.1(a) & (b) statements of material facts and exhibits ("Pl.'s 56.1" and "Defs.' 56.1") and the Administrative Record ("R.").

Plaintiff was employed by Boise Cascade Corporation as a senior marketing claim analyst. Defs.' 56.1 ¶ 3; Pl.'s 56.1 ¶ 7. Plaintiff's job required her to work for forty hours a week. Defs.' 56.1 ¶ 13. Plaintiff typically sat for five hours per day, stood for one hour per day,

2

and walked for up to two hours per day. Defs.' 56.1 ¶ 13. By virtue of her employment, Plaintiff was a participant, as defined by ERISA, in Boise Cascade's long-term disability insurance plan purchased from Continental Casualty and issued to Boise Cascade. Defs.' 56.1 ¶¶ 4-5.

The plan itself consists of two sets of documents – the Policy and the Certificate. R. at 6-26. The Policy states that Continental Casualty "will deliver certificates of insurance to the Employer for issuance to each *Insured Employee*. The certificates will describe the benefits, to whom they are payable, the policy limitations, and where the policy may be inspected." R. at 11. The Certificate then states that "[w]hen making a benefit determination under the policy, *We* have discretionary authority to determine *Your* eligibility for benefits and to interpret the terms and provisions of the policy." R. at 12. The Certificate, though, states it is not the policy and "is merely evidence of insurance provided under the policy." R. at 12. Nothing in the Policy makes any reference in any way to Continental Casualty's decision-making process regarding benefit eligibility. R. at 6-26.

Plaintiff sought long-term disability benefits and claimed that she was disabled because of "chronic pain that is debilitating – to the nerves around [her] left kidney with pain that flows around left flank and down left leg." Defs.' 56.1 ¶ 10. To meet the definition of disability, Plaintiff was required to show that she was continuously unable to perform the material and substantial duties of her regular occupation. Defs.' 56.1 ¶ 7. To make this showing, Plaintiff was required to provide proof in the form of: (1) objective medical findings which support her disability, which include but are not limited to tests, procedures, or clinical examinations

3

standardly accepted in the practice of medicine for her disabling condition; and (2) the extent of her disability, including restrictions and limitations which prevent Plaintiff from performing her regular occupation. Defs.' 56.1 ¶ 8.

Plaintiff was examined by Dr. Richard Fessler, who diagnosed Plaintiff with chronic pain syndrome secondary to left renal congenital abnormality. Pl.'s 56.1 ¶ 10. Plaintiff was also examined by Dr. Luz Feldmann, who diagnosed Plaintiff with complex regional pain syndrome, myofascial low back pain, site low back pain, CV angle pain, and spasms. Pl.'s 56.1 ¶ 47. Dr. Feldmann felt Plaintiff was disabled because she could not keep regular and consistent work hours. Defs.' 56.1 ¶ 12.

Dr. Richard Penn examined Plaintiff, as well. He first opined that Plaintiff should work part-time and gradually increase her hours, but that it would be doubtful Plaintiff would make a full recovery. Pl.'s 56.1 ¶ 34. Later on, Dr. Penn reported Plaintiff had bad days with symptoms of nausea and dizziness. Pl.'s 56.1 ¶ 41. Thereafter, he concluded that if Plaintiff would return to work, it would be extremely difficult and would probably result in many absences and an inability to carry out her job as needed. Pl.'s 56.1 ¶ 77. Therefore, Dr. Penn later stated that Plaintiff was disabled and may not be able to resume meaningful employment. Pl.'s 56.1 ¶ 79.

To support her claims, Plaintiff filled out daily-activity logs. Pl.'s 56.1 ¶¶ 53-66. The logs show that Plaintiff did activities such as driving her daughter to school, laundry, dusting, dishwashing, cooking, shopping for groceries, and walking. Pl.'s 56.1 ¶¶ 53-66. The logs also show that Plaintiff frequently rested. Pl.'s 56.1 ¶¶ 53-66. Furthermore, Plaintiff frequently took prescription medication to cope with her pain, both orally and through a Morphine pump that was

4

surgically implanted. Pl.'s 56.1 ¶¶ 21-24, 26-28, 30, 37-38, 40, 43-44, 53-66. The dosage of the pump started at less than 5 mg per day of Morphine, and was raised six times to reach a dosage of 14 mg per day. Pl.'s 56.1 ¶¶ 20-24, 27, 30.

Plaintiff's supervisor, Diane Oddo, also confirmed that Plaintiff was not able to work on a regular basis. Pl.'s 56.1 ¶¶ 82-83. According to the supervisor, Plaintiff frequently missed time from work because of her condition, which caused Plaintiff to fall behind and caused an extra burden on her co-workers. Pl.'s 56.1 ¶ 83. Plaintiff's supervisor also noted Plaintiff was given many accommodations as a result of her condition. Pl.'s 56.1 ¶ 83. Finally, the supervisor noted that Plaintiff had difficulty accomplishing her work because of the pain Plaintiff was experiencing. Pl.'s 56.1 ¶ 83. Oddo suggested Plaintiff apply for long-term disability benefits because of Plaintiff's condition. Pl.'s 56.1 ¶ 83.

Continental Casualty conducted surveillance on Plaintiff to determine the veracity of Plaintiff's claims. Pl.'s 56.1 ¶¶ 68-70. The surveillance revealed that Plaintiff was able to drive around and complete errands, as well as lift a child's bicycle from an automobile. Pl.'s 56.1 ¶¶ 68-70. Continental Casualty conducted an in-home interview with Plaintiff, as well. Pl.'s 56.1 ¶ 71. The interview revealed that Plaintiff kept her home clean and that Plaintiff was able to move around her home with little difficulty. Defs.' 56.1 ¶ 20.

Plaintiff was examined by Nurse Eileen Taylor, who stated that Plaintiff's use of medication only prohibited her from participating in activities requiring extended periods of driving or working around machinery. Pl.'s 56.1 ¶ 73. Nurse Taylor further stated that Plaintiff's level of function allowed her to participate in all activities requiring sitting and

standing and that Plaintiff could do all other physical activities not involving lifting, carrying, pushing, and pulling weights in excess of twenty pounds. Pl.'s 56.1 ¶ 73. Plaintiff's initial claim was then denied, and Plaintiff sought review of this denial. Pl.'s 56.1 ¶¶ 75, 80.

Nurse Taylor again reviewed Plaintiff's claim in conjunction with the review and concluded that there was no change in Plaintiff's functionality. Pl.'s 56.1 ¶ 81. Nurse Susan Gregory also reviewed Plaintiff's claim, and held that:

> Based on the information provided as well as the [Plaintiff's] self-report of functionality that includes driving, assisting her child with homework, managing finances and budgeting, and ability to attend to watching TV and reading as well as engaging in some social activities, there is no evidence to support a functional impairment that prevent[s] [Plaintiff] from performing her occupation.

Pl.'s 56.1 ¶ 84. Based on this decision, Plaintiff's review of her denial of benefits was then denied. Pl.'s 56.1 ¶¶ 85-86.

Plaintiff then sought review before the Continental Casualty Appeals Board. Pl.'s 56.1 ¶ 86. Continental Casualty asked Dr. Ronald DeVere to determine whether Plaintiff was disabled. R. at 30-34. Dr. DeVere reviewed Plaintiff's medical records, along with the daily activity logs submitted by Plaintiff and the surveillance observations conducted by Continental Casualty. R. at 30-33. Based on these records, Dr. DeVere impressions were, in pertinent part:

> It is my opinion, based on review of these medical records, that the claimant, [Plaintiff], has a left flank chronic pain disorder that began in her teenage years. Despite surgery on her redundant ureter and other operations, the pain has continued and developed progressively over the years. In my opinion, the cause of this pain is unclear. There does not appear to be any definite diagnosis noted in the medical records provided for review, or at least in my evaluation of this condition. None of the tests that have been done over the years have revealed any definite source for the claimant's pain. Also of note is that the claimant has been on numerous anti-inflammatory, neurological and narcotic medications and has received epidural injections. The most benefit that she has received is perhaps 40 to 50 percent reduction in her pain. I do not believe that there is any documented

6

evidence to give her a diagnosis of complex regional pain syndrome. She does
not meet clinical criteria for this disorder, which usually has some autonomic and
skin abnormalities. . . . In my opinion, the cause of [Plaintiff's] pain is not well
documented or diagnosed at this time, and I do not believe there is any obvious
answer to the source of her pain.

R. at 33-34. Dr. DeVere also stated, "I do not believe that her description of her daily activities and the observation of her daily activities coincide with her level of pain." R. at 33. Based on these impressions, Dr. DeVere concluded Plaintiff could perform the duties of her occupation. R. at 34.

Thereafter, Continental Casualty's Appeals Board issued a decision concerning Plaintiff's benefit claim. R. at 35-36. The decision stated:

In light of the medical evidence presented, [Plaintiff] stopped work related to a
complex regional pain syndrome and myofascial low back pain. In light of our
review of the medical evidence, we do not disagree that your client may have a
medical condition. We further agree that her condition may/and or may not
require ongoing medical treatment.

R. at 35. However, the Appeals Board concluded that Plaintiff had failed to meet the disability standard.

## ANALYSIS

The parties raise two issues. First, the parties dispute the applicable standard of review of Defendants' denial of disability benefits. Second, the parties dispute Defendants' decision not to provide Plaintiff disability benefits.

Defendants contend the applicable standard of review should be arbitrary and capricious, while Plaintiff argues the standard should be *de novo*. A denial of benefits will be reviewed *de novo* unless the plan grants the plan administrator discretionary authority to determine eligibility benefits. *E.g., Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 631 (7th Cir. 2004) (*Vallone*). If the

administrator is given discretionary authority, the denial of benefits is reviewed under the arbitrary and capricious standard. *Vallone*, 375 F.3d at 631. The grant of discretionary authority must be indicated in the plan with enough clarity so that employees understand the employer and insurer have discretion to deny claims. *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332-33 (7th Cir. 2000) (*Herzberger*).

Plaintiff does not dispute that the sentence in the Certificate asserts Continental Casualty has discretionary authority in making claim decisions. Rather, Plaintiff claims that the statement is insufficient in this regard because it is contained in the plan Certificate and not in the Policy.

Defendants claim the contrary and cite *Crespo v. Unum Life Insurance Co.*, 294 F. Supp. 2d 980 (N.D. Ill. 2003) (*Crespo*), in support. There, the certificate stated that the insurer had discretion to make benefit decisions. *Crespo*, 294 F. Supp. 2d at 984. However, the *Crespo* court cited no statements in the certificate which would have limited the use of the certificate's provisions in construing the insurance policy. Furthermore, the policy itself also stated that the insurer had discretionary authority to make benefit decisions and used the word "discretion" three times in the policy to highlight the insurer's discretionary authority. *Crespo*, 294 F. Supp. 2d at 984. The court found that these references to the insurer's discretionary authority regarding benefit determinations were sufficient to warrant the application of the arbitrary and capricious standard. *Crespo*, 294 F. Supp. 2d at 990, n.3.

Plaintiff cites a number of cases, including *Wolff v. Continental Casualty Co.*, No. 03 C 4667, 2004 WL 2195179 (N.D. Ill. Sept. 28, 2004) (*Wolff*), in support of her position. In that case, the certificate stated that the insurer had discretionary authority to determine eligibility benefits. *Wolff*, 2004 WL 2195179, at *3. The certificate also stated that it was not the policy

and merely evidence of the policy. *Wolff*, 2004 WL 2195179, at *3. The court concluded that the limiting language, stating the certificate was not the policy and merely evidence of the policy, was contrary to the insurer's claim that the Certificate and its discretionary decision was incorporated into the plan. *Wolff*, 2004 WL 2195179, at * 10.

Here, in contrast to *Crespo*, it is undisputed that the discretionary statement contained in the Certificate is the only reference made to Continental Casualty's decision-making process regarding benefit eligibility. Moreover, as in *Wolff*, the Certificate specifically states that it is not the policy and is merely evidence of the policy. The Policy does contain language that the Certificate will describe the Policy limitations. However, based upon the inconsistency between the clear and specific limiting language in the Certificate and the language in the Policy regarding the Certificate, it cannot be said that the insured has been advised with the requisite clarity that the employer and insurer have discretion to deny claims. "An ERISA plan can stipulate for deferential review . . . [b]ut the stipulation must be clear . . . . The employees are entitled to know what they're getting into, and so if the employer is going to reserve a broad, unchanneled discretion to deny claims, the employees should be told about this, and told clearly." *Herzberger*, 205 F.3d at 332-33.

Therefore, the denial of Plaintiff's claim will be reviewed under the *de novo* standard. Under this standard, Defendants' decision to deny benefits to Plaintiff must be reviewed to determine whether the decision was correct, as opposed to a review of the reasonableness of the decision pursuant to the arbitrary and capricious standard. *Herzberger*, 205 F.3d at 329.

To show she was disabled, Plaintiff must prove that she was continuously unable to perform the material and substantial duties of her regular occupation, a senior marketing claim

analyst. Plaintiff must: (1) present objective medical findings which support her disability; and (2) the extent of her disability, including restrictions and limitations which prevent her from performing her job. Defendants thus argue that the benefit decision was correct, and Plaintiff was not disabled because she failed to do both.

As to the first factor, the Seventh Circuit has held that "medical science confirms that pain can be severe and disabling even in the absence of 'objective' medical findings, that is, test results that demonstrate a physical condition that normally causes pain of the severity claimed by the [plaintiff]." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (*Carradine*). Thus, while objective medical evidence must support a finding of an underlying impairment, subjective evidence can be used to demonstrate that the pain associated with that condition is disabling. *Carradine*, 360 F.3d 753; *see also Hawkins v. First Union Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003) (*Hawkins*).

Continental Casualty argues that Dr. DeVere found no objective medical reason which would cause Plaintiff to suffer from pain and that MRIs and other scans did not show any cause of Plaintiff's pain.

While Continental Casualty's expert, Dr. DeVere, did not find any objective evidence to make a diagnosis of complex regional pain disorder, it is undisputed that he acknowledged that Plaintiff suffers from chronic pain disorder. It is also undisputed that one of Plaintiff's physicians, Dr. Fessler, diagnosed Plaintiff with chronic pain syndrome and that another of Plaintiff's physicians, Dr. Feldmann, diagnosed Plaintiff with complex regional pain syndrome and myofascial low back pain. Continental Casualty does not dispute the findings that Plaintiff has an underlying impairment. It is undisputed that the decision of Continental Casualty's

10

Appeals Board was that: (1) "In light of the medical evidence presented, [Plaintiff] stopped work related to a complex regional pain syndrome and myofascial low back pain"; and (2) "In light of our review of the medical evidence, we do not disagree that [Plaintiff] may have a medical condition."

Accordingly, no genuine issue of material fact exists that Defendants were incorrect in determining that Plaintiff had failed to present objective medical evidence demonstrating that she suffers from a disabling impairment.

Regarding the second factor, Defendants argue that information presented by Plaintiff demonstrates that she is not disabled. Specifically, Defendants cite Plaintiff's daily-activity log, surveillance of Plaintiff, and an interview conducted at Plaintiff's home. Defendants argue that Plaintiff did activities such as driving her daughter to school, laundry, dusting, dishwashing, cooking, shopping for groceries, and walking. However, "when one is working at home it is easier to interrupt one's work every few minutes if need be than to do so at the office." *Hawkins*, 326 F.3d at 918. Thus, whether Plaintiff is able to do light household chores is not determinative of whether Plaintiff can work full time. *Hillock v. Continental Cas. Co.*, No. 02 C 5126, 2004 WL 434217, at *6 (N.D. Ill. Mar. 2, 2004) (*Hillock*). These views are further confirmed by other entries in Plaintiff's daily-activity log; although Plaintiff was able to do the chores described above, it is undisputed that she also frequently rested. Also, as *Hillock* noted, Plaintiff would have to do these household chores **and** perform her work-related duties as well if she was not disabled. *Hillock*, 2004 WL 434217, at *7.

Regarding the surveillance and in-home interview, Defendants argue the surveillance revealed that Plaintiff was able to move without difficulty or pain; and the in-home interview

11

showed that Plaintiff kept a clean home. Defendants further argue that the surveillance revealed that Plaintiff was able to move a bicycle. However, these activities only reveal that, for limited periods of time, Plaintiff was able to complete certain activities. These activities, though, do not demonstrate Plaintiff is able to work full time; as discussed above, Plaintiff would be able to interrupt her activities at home in an effort to accomplish the activities. In fact, Plaintiff did as such, and Plaintiff frequently rested throughout the day.

Moreover, Plaintiff has presented undisputed evidence that she was continuously unable to perform the material and substantial duties of her regular occupation as a senior marketing claim analyst and has demonstrated the extent of her disability, including restrictions and limitations which prevent her from doing so. Plaintiff's job required her to work for forty hours a week and sit for five hours a day, stand for one hour a day, and walk two hours a day. Dr. Feldmann, a physician who examined Plaintiff, found that Plaintiff was disabled because she could not keep these work hours regularly and consistently.

Another physician, Dr. Penn, indicated that on Plaintiff's days when the pain was severe, she was not able to work. On some of these days, Plaintiff experienced nausea and dizziness. Dr. Penn also stated that it would be difficult for Plaintiff to work or properly meet the requirement of her job and that Plaintiff would probably be absent on many occasions. Dr. Penn later stated that Plaintiff was disabled and may not be able to resume meaningful employment.

Plaintiff's supervisor, Diane Oddo, also confirmed that Plaintiff was not able to properly work on a regular basis. According to the supervisor, Plaintiff missed time for her condition, which caused Plaintiff to fall behind and caused an extra burden on her co-workers. The

supervisor also observed that Plaintiff had difficulty accomplishing her work because of her pain. It was Plaintiff's supervisor who suggested Plaintiff apply for long-term disability benefits because of Plaintiff's condition.

Plaintiff was also taking a multitude of prescription drugs to help alleviate her pain. Plaintiff used an internal Morphine pump, which dispersed 14 mg of the drug per day. Use of pain medication, particularly to this extent, further substantiates that Plaintiff was experiencing significant pain which prevented her from working. "What is significant is the improbability that [the plaintiff] would have undergone the pain-treatment procedures that she did, which included not only heavy doses of strong drugs such as Vicodin, Toradol, Demerol, and even Morphine, but also the surgical implantation in her spine of a catheter and a spinal-cord stimulator, merely in order to strengthen her complaints of pain and so increase her chances of obtaining disability benefits . . . ." *Carradine*, 360 F.3d at 755.

In addition to the activity logs and surveillance discussed above, Defendants rely on the opinions of two nurses and Dr. DeVere. However, Defendants concede that "reliance on a nurse's opinion alone is insufficient to deny benefits in the face of [a] treating physician's opinions that a claimant is disabled," (Defs.' Resp. to Pl.'s Mot. At 10); *see also Billings v. Continental Cas. Co.*, No. 02 C 3200, 2003 WL 145420 (N.D. Ill. Jan. 21, 2003), and that the nurses' opinions were not used in the final decision by the Appeals Board and should not now be considered. (Defs.' Resp. to Pl.'s Mot. At 10).

Dr. DeVere's opinion held that: (1) "In my opinion, the cause of [Plaintiff's] pain is not well documented or diagnosed at this time, and I do not believe there is any obvious answer to the source of her pain"; and (2) "I do not believe that her description of her daily activities and

the observation of her daily activities coincide with her level of pain." Dr. DeVere concluded that Plaintiff was able to perform the material and substantial duties of her regular occupation. However, as discussed above, Dr. DeVere's impressions in this regard are unsupported and, in some instances, contrary to the facts.

Accordingly, no genuine issue of material fact exists that Defendants were incorrect that Plaintiff failed to demonstrate the extent of her disability, including restrictions and limitations which prevent Plaintiff from performing her job.

Plaintiff is awarded summary judgment.

Plaintiff seeks interest at the statutory rate of 9.00%, pursuant to 215 ILCS 5/357.9. Plaintiff also seeks attorney's fees under 29 U.S.C. § 1132(g). While these measures are presumptively awardable, granting interest and attorney's fees are discretionary measures that are determined on the basis of a number of factors that are not fully present before the Court. *See Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 818-20 (7th Cir. 2002).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted; and Defendant's Motion for Summary Judgment is denied.

Dated: 1-10-05

JOHN W. DARRAH
United States District Judge

14